1   JASON BARTLETT (State Bar No. 214530)
    jbartlett@mkwllp.com
2   MARC J. PERNICK (State Bar No. 160591)
    mpernick@mkwllp.com
3   MAURIEL KAPOUYTIAN WOODS LLP
    275 Battery Street, Suite 480
4   San Francisco, California 94111
    Telephone:  415-738-6228
5   Facsimile:  415-738-2315

6   *Attorneys for Defendants*
    JOSEPH ALTER and
7   JOSEPH ALTER, INC.

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10  AUTODESK, INC.,                    )  Case No. 3:16-cv-04722-JSC
                                       )
11                       Plaintiff,    )  **DECLARATION OF JOSEPH ALTER IN**
                                       )  **SUPPORT OF MOTION TO DISMISS**
12         v.                          )  **OR STAY**
                                       )
13  JOSEPH ALTER and                   )
    JOSEPH ALTER, INC., a California   )
14  corporation,                       )  Date: Thursday, November 10, 2016
                                       )  Time: 9:00 am
15                       Defendants.   )  Dpt.: San Francisco, Courtroom F
                                       )
16                                     )  Complaint Filed: August 17, 2016
                                       )
17  ─────────────────────────────────  )

18

19        I, Joseph Alter, declare:

20        1.      I am a defendant in the above-captioned matter and if called upon to testify I would

21  competently testify as follows based on my personal knowledge.

22        2.      I am a computer animation software developer.  My company, Joe Alter, Inc.,

23  makes and sells Shave and a Haircut™, a program for simulating hair and fur.

24        3.      Declaratory Judgement Plaintiff Autodesk makes Maya™, a computer animation

25  software package.  Shave and a Haircut is available for purchase as an extension ("plug-in") to

26  Maya and other Autodesk programs.

27

28

                                        -1-
    ALTER DECL. ISO MOT. TO DISMIS OR STAY

4.      The core technology underlying Shave and a Haircut is claimed in my U.S. Patent 6,720,962.  It enables efficient, realistic animation of hair and fur that appears to move naturally.  I filed the '962 Patent was filed in December 2000.  Attached as **Exhibit 1** is a report from Google Patents indicating that my patent has been cited as prior art against subsequent patent applications by Pixar, Disney, Sony, Microsoft, and Dreamworks.

5.      Shave and a Haircut is now in its ninth version.  It was successful for many years, consistently generating revenue from which I derived a modest income.  It was used to help make films including the "Pirates of the Caribbean," "X-Men," "King Kong," and "Charlotte's Web."

6.      Alter Inc. derived most of its revenue from sales to Autodesk users.  I considered Autodesk more a partner than a channel of trade.  Disney was a plug-in customer of ours.

7.      In 2006, Autodesk Vice President and General Manager of Autodesk's Media and Entertainment Division, Mark Petit sent a letter to the Academy of Motion Pictures supporting my nomination for an Academy Award in Scientific Achievement, citing his "innovative set of tools" and "original research."  Attached as **Exhibit 2** is a true and correct copy of the letter that he sent.

8.      In 2011, Autodesk announced at a computer animation industry conference that it had agreed to license and sell as a plug-in to Maya a software tool called "XGen™" that Disney developed in-house to animate Rapunzel's hair in its film "Tangled."  I contacted Disney regarding the '962 Patent and eventually sued it for infringement in the Northern District of California.  I did not have a lawyer to represent me in that suit and or in settling that suit.

9.      In resolving the Disney suit, I granted what I understood from the language of the settlement agreement and contemporaneous correspondence to be a limited license allowing Disney to distribute its XGen software, as-is, through Autodesk as a free plug-in module distributed with Maya.  I accepted a small settlement payment because I felt that I could not afford the cost of patent litigation against Disney and because I did not consider the Disney-made software to be a serious competitor.  As a production company, Disney makes unrefined, special-purpose tools sufficient for its needs in specific films.  It does not have the resources or incentive to make powerful, refined tools to enable others (including Disney's competitors) to make films as technologically advanced and compelling as those Disney itself makes.

-2-

ALTER DECL. ISO MOT. TO DISMIS OR STAY

10.     In the years since the Disney suit, I have watched in dismay as XGen was extensively refined and its feature set expanded.  Rather than withering on the vine, XGen appeared to have undergone a serious development effort.  Our revenues and profit margins collapsed as we plowed investment into Shave and a Haircut, trying to stay far enough of ahead of XGen to compete with the free distribution of XGen to all of his Maya customers.  Last year, everything began to be become clear to me when I learned through my personal network that Disney had given Autodesk the full source code to XGen, and that Autodesk, not Disney, has been developing it.  In effect, XGen is no longer a Disney product.  XGen is now an Autodesk product.

11.     On information and belief, Autodesk can spend heavily on development and still offer XGen for free because Autodesk derives its revenues from sales of Maya itself, not from plug-ins.  I believe that Autodesk has overwhelming resources and incentive to expand and polish XGen into an industry-leading hair and fur simulator, eliminating small plug-in operators like me.

12.     When I contacted Disney and Autodesk about this state of affairs, Autodesk asserted that the Disney settlement and license agreement had exhausted the '962 Patent and that its agreement with Disney entitled it to do whatever it wanted with XGen free of the patent – including making unlimited copies and whatever modifications and expansions that Autodesk might like, adapting and recompiling it to work with other products, operating systems, and machines, and sublicensing the product to other companies for use with their products.  In practical effect, they asserted that Disney had acquired the right to sublicense the '962 Patent to anyone with no additional compensation to me – something that I made clear at the time of the settlement I was not willing to do except at a price sufficient to buy me out of the business.

13.     Through the first half of 2016, I had a long series of informal communications with my contacts at Autodesk and Disney about this problem.  In these communications, I made clear that I considered Disney liable for having exceeded its rights under the settlement agreement.  Disney asserted that any infringement would be Autodesk's responsibility and suggested that I take the matter up with them.  At the same time, Disney counsel asserted to me that that the settlement agreement contains a covenant not to sue Disney's customers (which Autodesk purports to be) in connection with "Licensed Products" under the settlement agreement.  Disney threatened

1    to counterclaim against me if I violated that provision by suing Autodesk.  In view of Disney's

2    threat, I had no intention of suing Autodesk.  Attached as **Exhibit 3** is a letter that I received from

3    Disney Associate General Counsel Roger Kennedy relating to these communications.  In the letter,

4    Mr. Kennedy states that asserting claims of infringement against "Disney and its customers"

5    would violate the "Covenant Not to Sue" section of our license agreement.

6          14.    On July 22, 2016, I sued Disney for breach of contract in California State Court. I

7    have alleged that Disney's apparent broad grant of control of the XGen product to Autodesk, and

8    Autodesk's expansion and sale of an Autodesk-version of XGen, breached the settlement

9    agreement.  I am seeking damages resulting from Disney's failure to comply with the terms of the

10   Settlement Agreement and Disney's efforts to help Autodesk avoid the '962 Patent.  I understand

11   that Disney removed the contract suit to the Central District of California and moved to stay

12   pending the resolution of this later-filed declaratory judgment suit.  I understand further that the

13   stay motion and a motion to remand are now pending.  A true and correct copy of my complaint

14   against Disney is attached hereto as **Exhibit 4**.

15         15.    On July 26, 2016, my counsel in the Disney litigation notified Autodesk of the suit

16   and requested that Autodesk provide copies of its correspondence with Disney relating to the

17   settlement agreement.  I believe that this agreement and surrounding correspondence (which have

18   been withheld) will support my breach of contract action by demonstrating that Disney always

19   intended, contrary to its representations at the time of the settlement, to enable Autodesk to treat

20   XGen as an Autodesk product and as a convenient, inexpensive means of conferring the

21   equivalent of a sublicense of the '962 Patent.  I understand that my counsel also stated in the letter

22   that Autodesk's sale of XGen outside the scope of the Disney settlement is an infringement of the

23   '962 Patent.

24         16.    I understand that on August 17, Autodesk filed this action for declaratory judgment

25   of non-infringement, exhaustion, and license.  I note that Autodesk has not alleged that the '962

26   Patent is invalid.  Since at the time I had no lawyer to represent me in this dispute, I personally

27   contacted Autodesk's counsel on multiple occasions to assert that no litigation between Autodesk

28

ALTER DECL. ISO MOT. TO DISMIS OR STAY

and Alter concerning XGen and the '962 Patent would be reasonable until my contract dispute with Disney was resolved.  Autodesk was unmoved.

17.     I understand that Autodesk's complaint seeks a declaration that none of its products infringe the '962 Patent.  Autodesk's Maya alone contains hundreds of modules, including multiple specific hair and fur modules.  I have not evaluated all of Autodesk's products or raised any allegations of infringement apart from those discussed above in connection with Disney's XGen.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 3rd day of October, 2016 at Westlake Village, California.

_/S/  Joseph Alter_
Joseph Alter

Local Rule 5.1 Attestation

Pursuant to Northern District of California Local Rule 5.1, I attest that concurrence in the filing of this Declaration of Joseph Alter has been obtained from Joseph Alter, which shall serve in lieu of his signature on this document.

_/S/  Jason Bartlett_
Jason R. Bartlett

ALTER DECL. ISO MOT. TO DISMIS OR STAY

Exhibit 1

Google Patents Citation Data – U.S. Patent 6,720,962

| Publication number | Priority date | Publication date | Assignee | Title |
|---|---|---|---|---|
| US20070291050A1 * | 8/6/1999 | 12/20/2007 | Bruderlin Armin W | Multiple instantiable effects in a hair/fur pipeline |
| US9070228B2 | 8/6/1999 | 6/30/2015 | Sony Corporation | Instanced hair database for use in a hair/fur pipeline |
| US7050062B2 * | 8/6/1999 | 5/23/2006 | Sony Corporation | Method and apparatus for the digital creation of fur effects |
| US8957907B2 * | 8/6/1999 | 2/17/2015 | Sony Corporation | Fill-volume techniques for use in a hair/fur pipeline |
| US8810582B2 | 8/6/1999 | 8/19/2014 | Sony Corporation | Hair caching optimization techniques for use in a hair/fur pipeline |
| US8717362B2 * | 8/6/1999 | 5/6/2014 | Sony Corporation | Sub-patch optimization techniques for use in a hair/fur pipeline |
| US20020057278A1 * | 8/6/1999 | 5/16/2002 | Sony Corporation and Sony Pictures Entertainment, Inc. | Method and apparatus for the digital creation of fur effects |
| US20070273704A1 * | 8/6/1999 | 11/29/2007 | Sony Corporation | Hair caching optimization techniques for use in a hair/fur pipeline |
| US20070273705A1 * | 8/6/1999 | 11/29/2007 | Sony Corporation | Geometric instancing techniques for use in a hair/fur pipeline |
| US20070216701A1 * | 8/6/1999 | 9/20/2007 | Sony Corporation | Screen space optimization techniques for use in a hair/fur pipeline |
| US8711151B2 * | 8/6/1999 | 4/29/2014 | Sony Corporation | Hair motion compositor system for use in a hair/fur pipeline |
| US8704841B2 | 8/6/1999 | 4/22/2014 | Sony Corporation | Method and apparatus for the digital creation of fur effects |
| US8624889B2 | 8/6/1999 | 1/7/2014 | Sony Corporation | Multiple instantiable effects in a hair/fur pipeline |
| US8624888B2 * | 8/6/1999 | 1/7/2014 | Sony Corporation | Screen space optimization techniques for use in a hair/fur pipeline |
| US20080036782A1 * | 8/6/1999 | 2/14/2008 | Sony Corporation | Hair motion compositor system for use in a hair/fur pipeline |
| US7880744B2 | 8/6/1999 | 2/1/2011 | Sony Corporation | Geometric instance techniques for use in a hair/fur pipeline |
| US20060158453A1 * | 8/6/1999 | 7/20/2006 | Bruderlin Armin W | Method and apparatus for the digital creation of fur effects |
| US20070291043A1 * | 8/6/1999 | 12/20/2007 | Bruderlin Armin W | Instanced hair database for use in a hair/fur pipeline |
| US20070279428A1 * | 8/6/1999 | 12/6/2007 | Sony Corporation | Sub-patch optimization techniques for use in a hair/fur pipeline |

| Publication number | Priority date | Publication date | Assignee | Title |
|---|---|---|---|---|
| US20070273685A1 * | 8/6/1999 | 11/29/2007 | Sony Corporation, Sony Pictures Electronics Inc. | Fill-volume techniques for use in a hair/fur pipeline |
| US7612778B2 | 9/28/2000 | 11/3/2009 | At&T Intellectual Property Ii, L.P. | Graphical user interface graphics-based interpolated animation performance |
| US8125482B2 | 9/28/2000 | 2/28/2012 | At&T Intellectual Property Ii, L.P. | Graphical user interface graphics-based interpolated animation performance |
| US7391420B1 * | 9/28/2000 | 6/24/2008 | At&T Corp. | Graphical user interface graphics-based interpolated animation performance |
| US20080222574A1 * | 9/28/2000 | 9/11/2008 | At&T Corp. | Graphical user interface graphics-based interpolated animation performance |
| US20080222555A1 * | 9/28/2000 | 9/11/2008 | At&T Corp. | Graphical user interface graphics-based interpolated animation performance |
| US8194079B2 | 12/29/2000 | 6/5/2012 | Pixar | Inertial field generator: a method for controllably coupling kinematic character motions to dynamically simulated elements |
| US20020113793A1 * | 12/29/2000 | 8/22/2002 | Baraff David E. | Inertial field generator: a method for controllably coupling kinematic character motions to dynamically simulated elements |
| US20020167513A1 * | 5/10/2001 | 11/14/2002 | Pixar | Animation Studios Global intersection analysis for determining intesections of objects in computer animation |
| US7355600B2 | 5/10/2001 | 4/8/2008 | Pixar | Global intersection analysis for determining intersections of objects in computer animation |
| US20070002042A1 * | 5/10/2001 | 1/4/2007 | Baraff David E | Global intersection analysis for determining intersections of objects in computer animation |
| US6970171B2 | 5/10/2001 | 11/29/2005 | Pixar | Global intersection analysis for determining intesections of objects in computer animation |

2

| Publication number | Priority date | Publication date | Assignee | Title |
|---|---|---|---|---|
| US20030179203A1 * | 2/12/2002 | 9/25/2003 | Sony Electronics, Inc. | System and process for digital generation, placement, animation and display of feathers and other surface-attached geometry for computer generated imagery |
| US7427991B2 * | 2/12/2002 | 9/23/2008 | Sony Corporation | System and process for digital generation, placement, animation and display of feathers and other surface-attached geometry for computer generated imagery |
| US20050253842A1 * | 5/14/2003 | 11/17/2005 | Pixar | Hair rendering method and apparatus |
| US7098910B2 * | 5/14/2003 | 8/29/2006 | Lena Petrovic | Hair rendering method and apparatus |
| US20040227757A1 * | 5/14/2003 | 11/18/2004 | Pixar | Hair rendering method and apparatus |
| US7327360B2 | 5/14/2003 | 2/5/2008 | Pixar | Hair rendering method and apparatus |
| US7098911B2 * | 7/18/2003 | 8/29/2006 | Microsoft Corporation | Placing feathers on a surface |
| US20050012746A1 * | 7/18/2003 | 1/20/2005 | Microsoft Corporation | Modeling and rendering of realistic feathers |
| US7042456B2 | 7/18/2003 | 5/9/2006 | Microsoft Corporation | Modeling and rendering of realistic feathers |
| US20050012741A1 * | 7/18/2003 | 1/20/2005 | Microsoft Corporation | Placing feathers on a surface |
| US7468730B2 * | 3/25/2004 | 12/23/2008 | Pixar | Volumetric hair simulation |
| US7450122B2 * | 3/25/2004 | 11/11/2008 | Pixar | Volumetric hair rendering |
| US20050212800A1 * | 3/25/2004 | 9/29/2005 | Pixar | Volumetric hair simulation |
| US7609261B2 | 5/17/2004 | 10/27/2009 | Pacific Data Images Llc | Modeling hair using interpolation and clumping in an iterative process |
| US7348973B1 | 5/17/2004 | 3/25/2008 | Pacific Data Images Llc | Modeling hair using interpolation and clumping in an iterative process |
| US20080170069A1 * | 5/17/2004 | 7/17/2008 | Pacific Data Images Llc | Modeling hair using interpolation and clumping in an iterative process |
| US7499052B2 * | 7/30/2004 | 3/3/2009 | Sony Corporation | Z-jittering of particles in image rendering |
| US20060022975A1 * | 7/30/2004 | 2/2/2006 | Rob Bredow | Z-jittering of particles in image rendering |

| Publication number | Priority date | Publication date | Assignee | Title |
|---|---|---|---|---|
| US7872654B2 | 11/15/2004 | 1/18/2011 | Dreamworks Animation Llc | Animating hair using pose controllers |
| US20080297519A1 * | 11/15/2004 | 12/4/2008 | Dreamworks Animation Llc | Animating hair using pose controllers |
| US7649535B2 | 4/21/2006 | 1/19/2010 | Dreamworks Animation Llc | Layering method for feather animation |
| US8436861B1 | 6/8/2006 | 5/7/2013 | Pixar | Pose-based collision fly-papering: a method of simulating objects in computer animation |
| US7911469B1 | 6/8/2006 | 3/22/2011 | Pixar | Pose-based collision fly-papering: a method for simulating objects in computer animation |
| CN101512633B | 7/24/2006 | 1/25/2012 | 索尼株式会社 | A hair motion compositor system and optimization techniques for use in a hair/fur pipeline |
| EP1986158A2 | 4/27/2007 | 10/29/2008 | DreamWorks Animation LLC | Decorating computer generated character with surface attached features |
| US8004519B2 | 4/27/2007 | 8/23/2011 | Dreamworks Animation Llc | Decorating computer generated character with surface-attached features |
| US7859546B2 | 4/27/2007 | 12/28/2010 | Dreamworks Animation Llc | Placing skin-attached features on a computer generated character |
| EP1986157A2 | 4/27/2007 | 10/29/2008 | DreamWorks Animation LLC | Placing skin-attached features on a computer generated character |
| US20080266308A1 * | 4/27/2007 | 10/30/2008 | Dreamworks Animation Llc | Placing skin-attached features on a computer generated character |
| US20080266292A1 * | 4/27/2007 | 10/30/2008 | Dreamworks Animation Llc | Decorating computer generated character with surface-attached features |
| US20100156902A1 * | 12/22/2008 | 6/24/2010 | Electronics And Telecommunications Research Institute | Method and apparatus for generating graphic hair motion |
| WO2011034858A2 * | 9/15/2009 | 3/24/2011 | Cem Yuksel | Hair meshes |
| US20110063291A1 * | 9/15/2009 | 3/17/2011 | Cem Yuksel | Hair meshes |
| US9177421B2 | 9/15/2009 | 11/3/2015 | Cem Yuksel | Hair meshes |

| Publication number | Priority date | Publication date | Assignee | Title |
|---|---|---|---|---|
| WO2011034858A3 * | 9/15/2009 | 7/7/2011 | Cem Yuksel | Hair meshes |
| US20110216070A1 * | 3/4/2010 | 9/8/2011 | Pixar | Scale separation in hair dynamics |
| US8698810B2 * | 3/4/2010 | 4/15/2014 | Pixar | Reorienting properties in hair dynamics |
| US20110216074A1 * | 3/4/2010 | 9/8/2011 | Pixar | Reorienting properties in hair dynamics |
| US9098944B2 | 3/4/2010 | 8/4/2015 | Pixar | Scale separation in hair dynamics |
| US20120013618A1 * | 7/14/2010 | 1/19/2012 | Disney Enterprises, Inc. | Method for determining point connectivity on a two manifold in 3d space |
| US8730235B2 * | 7/14/2010 | 5/20/2014 | Disney Enterprises, Inc. | Method for determining point connectivity on a two manifold in 3D space |
| US8982157B2 | 7/27/2010 | 3/17/2015 | Dreamworks Animation Llc | Collision free construction of animated feathers |

Exhibit 2

Autodesk Canada
210 King Street East
Toronto, Ontario
M5A 1J7
Canada

www.autodesk.com

PHONE   416 362 9181
FAX     416 369 6140

Headquarters
10 Duke Street
Montreal, Quebec
H3C 2L7
Canada

marc.petit@autodesk.ca
Tel. 514 954 7425

September 18, 2006

Dear Academy Members,

I'm writing this note in support of Joe Alter's "*Shave and a Haircut*" and its consideration for a Scientific Achievements Award.

Joe has created an innovative set of tools and has aggressively refined it. His toolset has without question advanced the state of the art in this field and has brought original research and a very advanced capability to a broad section of the industry.

We work closely with Joe and he has been a consistently eager partner who is interested in making a quality product.   I feel on this basis he is deserving of your consideration, and I will be happy to answer any questions you may have or refer you to other contacts in our company.

Regards.

Marc Petit
Vice President & General Manager
Autodesk Media and Entertainment

Autodesk®

Exhibit 3



The Walt Disney Company
Roger Kennedy
Associate General Counsel

Joe Alter
1412 Oldbury Pl,
Westlake Village,
CA, USA 91361.

July 08, 2016

Joe,

I stand by my earlier emails to you, which are attached for your convenience. At this point, based on your emails, your dispute is clearly with Autodesk, not with Disney. Thus, we must again decline your request to get involved. In your last email, however, you also threatened Disney with litigation for breach of contract. Let me be clear -- we believe any such action would be completely unjustified and improper. Disney's agreement with you does not obligate Disney to restrict its licenses to its customers in any way or to take any steps with respect to your patent. Our obligation was to pay you and we have done that. Thus, whatever rights Disney granted to Autodesk, and whatever Autodesk may be doing with XGen (which is a Licensed Product under our agreement with you), it cannot create a breach of contract by Disney.

Regardless of what Autodesk may be doing, we remind you of your continuing obligations under our agreement, which serve to protect Disney and its customers from allegations that the XGen product infringes your patents. For example, we refer you to Section 2.3 Covenant Not to Sue. Accordingly, the litigation you have threatened against Disney would lack a good faith basis. Disney expressly reserves all rights and remedies in the event you were to file an action.

Joe, we hope that you will agree with our view of this matter, and that you will honor your agreement with us.

Best regards,

Roger Kennedy
The Walt Disney Company
Patents Department
500 S. Buena Vista Street, MC 1332
Tel: 818-560-2723
Email: Roger.Kennedy@disney.com

**Subject:** Autodesk

**Date:** Thursday, June 30, 2016 at 9:19:51 PM Pacific Daylight Time

**From:** joe alter

**To:** Kennedy, Roger, Craig Smith, Joel Rothman, kathleen.fuller@autodesk.com

Hi Roger,

Would you be willing to have a talk with my attorneys?

I've been trying to negotiate a way out of this with Autodesk, but those negotiations have collapsed.

Autodesk claims that their agreement with you guys confers all rights, at some point we're going to have to either go after you guys for breach of contract, or them for patent infringement. It all seems to depend on what your agreement with them is.

Would it be possible to get you to write a letter to their counsel specifying that their agreement with you does not include making substantial changes to your product or porting it to other applications?

Would it be possible to get a look at your contract with them with amounts redacted so we can see what kinds of restrictions are placed on autodesk to be consistent with our agreement?

Regards,

Joe

--

-----------------------------------------------------------------------------------------------
User Forums / Support Requests : https://joealterinc.zendesk.com
Web : www.joealter.com   www.lbrush.com

**Subject:** Re: xgen/disney conversation
**Date:** Thursday, May 19, 2016 at 10:50:29 AM Pacific Daylight Time
**From:** Kennedy, Roger
**To:** joe@joealter.com
**CC:** Marc Stevens, Huntsman Law Group, PLLC, kathleen.fuller@autodesk.com, Chen, Alexander C. - Legal

Joe,

These discussions have been somewhat difficult because they have all been based upon generalized hypotheticals with no real substance. If you have specific details on how Autodesk is using Xgen in a manner you believe is not licensed under Disney's agreement with you please provide those details to us. Absent that information these continued emails are meaningless and we will consider this matter closed.

However, on a final note I will address your specific question regarding Autodesk's right to implement our Licensed Product. I direct you to Section 2.1 of your License Agreement with Disney which states "The licenses granted in this Section 2.1 extend to (a)...; (b) direct or indirect customers or end-users of the Licensed Products to the extent necessary to implement or use the Licensed Products..."

**Roger Kennedy**
Associate General Counsel - Patents
The Walt Disney Company
500 S. Buena Vista Street, MC – 1332 / Burbank, CA 91521
Tel: 818.560.2723 / Tie-line 8-228-2723 / Fax: 818.560.2755
Email: roger.kennedy@disney.com

This message, including any attachments, contains confidential, attorney-client privileged, attorney work product, or other proprietary information, and is only for the use of the intended recipient(s). Any review, use, or distribution by others is prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** joe alter <joealterinc@gmail.com>
**Reply-To:** "joe@joealter.com" <joe@joealter.com>
**Date:** Wednesday, May 18, 2016 at 9:28 PM
**To:** Joe Alter <joe@joealter.com>
**Cc:** Roger Kennedy <roger.kennedy@disney.com>, Marc Stevens <Marc.Stevens@autodesk.com>, "Huntsman Law Group, PLLC" <bobh@huntsmanlg.com>, "kathleen.fuller@autodesk.com" <kathleen.fuller@autodesk.com>, Alex Chen <Alexander.C.Chen@disney.com>
**Subject:** Re: xgen/disney conversation

Roger,

Just to follow up, if you guys haven't implemented xgren, or otherwise haven't integrated or conformed it to another package or bundle, the agreement does not provide you with the right to authorize Autodesk to do that for you.

It only authorizes them to distribute it as they see fit, it does not authorize them to do further development or any kind of re-purposing of the 'product' xgen as delivered to them by you.

Joe

On Wed, May 18, 2016 at 9:18 PM, joe alter <joealterinc@gmail.com> wrote:
> Hi Roger,
> Can you clarify what you mean by "implement"?
> Because, from my understanding, that is not something we cover in our settlement for anything but an "affiliate", unless I've overlooked some aspect of our agreement?

Regards,
Joe Alter

> On Wed, May 18, 2016 at 4:18 PM, Kennedy, Roger <Roger.Kennedy@disney.com> wrote:
> Joe,
>
> Thank you for your email regarding our call. While I think in general it covers what we discussed, I do not agree with certain aspects of it. Rather than going point by point, I would like to clarify our view of the situation with respect to the following points.
>
> Disney's license agreement with you, among other things, allows us to provide to our customers products which may be within the scope of your Licensed Patents. Under the terms of the license agreement (including by operation of the patent exhaustion doctrine), those customers at the very least may then use, implement, commercially exploit and distribute those Disney products for any purpose and in any format or bundle. Such rights would apply fully to Disney's product, XGen, as it may be used, implemented, commercially exploited and distributed by our customer, Autodesk.
>
> Disney, however, is not privy to any modifications that Autodesk may have made or intends to make to XGen, and it is up to Autodesk to decide how and if they intend to modify XGen, including "fixes" or otherwise. As such, beyond acknowledging that our license agreement with you granted certain rights (including the examples discussed above) to Disney and its customers such as Autodesk, Disney is not now in a position to determine whether any particular modifications would be impacted by your license grant to Disney. Thus, for present purposes, we leave the discussion of that up to you and Autodesk.
>
> I hope this email clarifies our understanding of the license agreement with respect to Disney's licensed products, and their use and distribution by Disney's customers.
>
> **Roger Kennedy**

Associate General Counsel - Patents
The Walt Disney Company
500 S. Buena Vista Street, MC – 1332 / Burbank, CA 91521
Tel: 818.560.2723 / Tie-line 8-228-2723 / Fax: 818.560.2755
Email: roger.kennedy@disney.com

This message, including any attachments, contains confidential, attorney-client privileged, attorney work product, or other proprietary information, and is only for the use of the intended recipient(s). Any review, use, or distribution by others is prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** joe alter <joealterinc@gmail.com>
**Reply-To:** "joe@joealter.com" <joe@joealter.com>
**Date:** Monday, May 16, 2016 at 11:32 AM
**To:** Marc Stevens <Marc.Stevens@autodesk.com>, Roger Kennedy <roger.kennedy@disney.com>, "Huntsman Law Group, PLLC" <bobh@huntsmanlg.com>, "kathleen.fuller@autodesk.com" <kathleen.fuller@autodesk.com>
**Subject:** xgen/disney conversation

Hi Marc,
Just had a call with Roger, Chen, and Bob (my attorney), and we all seem to be on the same page in terms of what's covered under the settlement agreement and what's not, we're also all in agreement that relevant portions of the agreement can be shared between parties.

Basically, you guys are cleared to distribute XGen (or any Disney licensed product) that contains the infringement, however, it's basically as-delivered by Disney.

If they included source with that, it's primarily for fixes, not a license to further exhaust the patent.

Substantial modifications (such as additional features or re-purposing of the product as that would indeed be downstream exhaustion) is not covered by the settlement Agreement between us and Disney, and they didn't seem to feel that their agreement with you guys covered it either and are at your own risk.

They should confirm this explicitly in an email shortly (as discussed on phone), and once you guys are on the same page maybe we can talk further.

Regards,

Joe Alter
cc: Roger, Bob,kathleen

--

Exhibit 4

1 | **CRAIG R. SMITH (State Bar No. 180338)**
**SMITH LAW FIRM**
2 | **A Professional Law Corporation**
**21550 Oxnard Street, Suite 760**
3 | **Woodland Hills, California 91367**
**Telephone:    (818) 703-6057**
4 | **Facsimile:    (818) 703-6058**

5 | Attorneys for Plaintiffs JOSEPH ALTER, and JOSEPH ALTER, INC.

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF LOS ANGELES**

10

11 | JOSEPH ALTER, and JOSEPH ALTER, INC.,    )    **CASE NO.**
a California corporation                  )
12 |                                          )    **COMPLAINT FOR:**
       Plaintiff,                           )
13 |                                          )    **1)    BREACH OF CONTRACT;**
                                            )    **2)    BREACH OF THE IMPLIED**
14 | THE WALT DISNEY COMPANY; and DOES    )          **COVENANT OF GOOD FAITH**
1 THROUGH 100, inclusive,                 )          **AND FAIR DEALING;**
15 |                                          )    **3)    INTENTIONAL INTERFERENCE**
       Defendants.                          )          **WITH PROSPECTIVE**
16 | _____   )          **ECONOMIC ADVANTAGE;**
                                                  **4)    NEGLIGENT INTERFERENCE**
17 |                                                       **WITH PROSPECTIVE**
                                                       **ECONOMIC ADVANTAGE**
18

19 |                                                **REQUEST FOR JURY TRIAL**

20 |        COMES NOW Plaintiffs JOSEPH ALTER, and JOSEPH ALTER, INC., and for causes

21 | of action against Defendants, and each of them, as follows:

22 |                         **INTRODUCTORY ALLEGATIONS**

23 |        1.    Plaintiff JOSEPH ALTER ("Alter") is an individual and the owner of that certain

24 | patent with publication number 6720962 issued by the United States Patent and Trademark

25 | Office.

26 |        2.    Plaintiff JOSEPH ALTER, Inc. ("JAI") is a California corporation with its

27 | principal place of business in the County of Los Angeles, State of California.

28

- 1 -
**COMPLAINT**

3.      Defendant THE WALT DISNEY COMPANY ("TWDC") is a Delaware corporation authorized to do business in the State of California, with its principal place of business in County of Los Angeles, State of California.

4.      Defendants DOES 1 through 100, inclusive, are sued pursuant to the provisions of California Code of Civil Procedure, Section 474.  Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 100.  Plaintiffs are informed and believe and on the basis of said information and belief allege that all fictitiously named Defendants and each of them have some connection with the activities herein complained of, and are responsible in some way for the wrongful conduct herein alleged.

5.      Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants and each of them are, and at all times herein mentioned were, the agents, joint venturers, officers, members, representatives, servants, consultants or employees of their co-Defendants, and in committing the acts herein alleged, were acting within the scope of such affiliation with the knowledge, permission, consent or subsequent ratification of their co-Defendants.

6.      Prior to December 4, 2000, Alter invented certain methods for creating and controlling interpolated volumes of computer-generated objects.  Applications of these techniques in computer graphics and computer animation include: (1) the definition and control of a pseudo-coordinate systems for use in creating geometry which must grow from said surface (2) the creation of a highly stable coordinate system involving control guide columns on which Cartesian physical simulations may be carried out and interpolated, displaced and rendered.  The foregoing is the subject of United States Patent Number 6,720,962 entitled "Hair Generation and Other Natural Phenomena with Surface Derived Control Volumes in Computer Graphics and Animation."   A true and correct copy of the Patent is attached as Exhibit A (the "Patent" or "Patent Methods").  The Patent Methods have many successful applications and are used principally as generate computer graphics and animation.  Alter practices the Patent in connection with his award winning "Shave and a Haircut" computer graphics and animation software.

**COMPLAINT**

7.     One extremely successful application of the Patent Methods is the creation of simulated human and animal hair using computer graphics and animation.  Before the Patent Methods, computer graphics depictions of hair were inferior and not lifelike.  The Patent Methods create life-like hair and fur.  The Patent Method has revolutionized computer generated animation.

8.     TWDC is the creator of XGen, a procedural geometry instancing tool used in computer generated animation.  In creating XGen, TWDC incorporated features that practice the Patent.  As a result, on or about October 5, 2011, Alter instituted that certain action styled *Alter v. The Walt Disney Company*, United States District Court Case No. 2:11- cv-08277-PA-CW for patent infringement (the "Disney Action").  The Disney Action was settled pursuant to that certain written Settlement and License Agreement dated January 31, 2012 (the "Settlement Agreement").  As the name suggests, the Settlement Agreement provides a license to TWDC and its Affiliates (as that term is defined in the Settlement Agreement) to practice the Patent as part of TWDC's development of products like XGen.  The Settlement Agreement restricts TWDC from allowing or permitting third parties (entities which are not TWDC or any entity controlled by TWDC) it licenses or otherwise permits to use or distribute any products of TWDC from practicing the Patent, or participating in the development of said products.

9.     Plaintiffs are informed and believe and on the basis of said information and belief allege that Defendants entered into an agreement with Autodesk, Inc. (the "Autodesk Agreement") for Autodesk, Inc. ("Autodesk") to distribute XGen with its Maya product.

10.     At or about the time of the settlement of the Disney Action, TWDC confirmed to Plaintiffs that Autodesk's rights pursuant its agreement with Autodesk were limited to distribution and that Autodesk did not have any rights to develop or expand upon the features of XGen.

11.     After January 31, 2012, Autodesk developed and expanded upon the features of XGen and created essentially a new product by the same name, which at its core is still infringing the Patent.  Autodesk has bundled and distributed it with its Maya product.  Plaintiffs are informed and believe and on the basis of said information and belief allege that Autodesk

**COMPLAINT**

1   developed and expanded upon the features of XGen with the knowledge and consent of TWDC.

2   Autodesk is infringing on the Patent.  Plaintiffs are informed and believe and on the basis of said

3   information and belief allege that Autodesk is infringing on the Patent as a direct result of

4   TWDC's breach of the Settlement Agreement.   On or about August 8, 2013, Autodesk released

5   an upgraded version of XGen.

6          12.     JAI owns and markets a product "Shave and a Haircut."  JAI derives the bulk its

7   revenue from selling Shave and a Haircut to Autodesk customers as a plug-in for Autodesk's

8   Maya product. As a result of TWDC's breach of the Settlement Agreement, JAI has lost sales of

9   its product.  Further, because of Autodesk's patent infringement resulting from TWDC's breach

10  of the Settlement Agreement, JAI has had diluted sales and pricing of its product to other

11  animators who now use Maya.  Therefore, TWDC has interfered with JAI's business with third

12  parties thereby causing it additional damage. Further, because of TWDC's breach of the

13  Settlement Agreement, there is nothing preventing Autodesk from creating other infringing

14  products for other software which Autodesk makes, or licensing said products to even other third

15  parties who could do the same, creating wide spread infringement of the Patent in the industries

16  that Plaintiffs now occupy and intend to occupy.  Additionally, Plaintiffs have made in excess of

17  $1 million in licensing fees directly from Autodesk for distribution with another animation

18  product they make called 3DStudio Max, a licensing arrangement which was not renewed

19  subsequent to Autodesk's unauthorized development of the XGen product.

20                          **FIRST CAUSE OF ACTION**

21                         **FOR BREACH OF CONTRACT**

22                              Against all Defendants

23          13.     Plaintiffs incorporate by this reference each and every allegation contained in

24  paragraphs 1 through 12 above, as though fully set forth herein.

25          14.     Plaintiffs and Defendants entered into the written Settlement Agreement as

26  alleged herein.

27          15.     Plaintiffs have fully performed all the conditions, covenants, actions and promises

28

**COMPLAINT**

1  under the Settlement Agreement except for any conditions, covenants, actions or promises which

2  Plaintiffs were prevented from performing by Defendants or which have been prevented, excused

3  or waived.

4       16.     Within the last four years, Defendants breached their contract with Plaintiffs by

5  facilitating Autodesk's expansion upon and development of the features of XGen and

6  incorporation of those features into Maya thereby infringing upon the Patent; as well as enabling

7  Autodesk to capture and emulate Plaintiffs' product enhancements and incorporate those into the

8  modified XGen product.

9       17.     Plaintiffs are informed and believe and on the basis of said information and belief

10  allege that as a direct, proximate and substantial result of the conduct of Defendants, Plaintiffs

11  have been damaged.  Plaintiffs are informed and believe and on the basis of said information and

12  belief allege that they have suffered damages of at least $15,000,000, plus incidental and

13  consequential damages, all in amounts yet to be determined.  Plaintiffs will either seek leave to

14  amend this complaint setting forth the full nature and extent of the damages, or according to

15  proof presented at the time of trial of this matter.

16  **SECOND CAUSE OF ACTION**

17  **FOR BREACH OF THE IMPLIED COVENANT OF GOOD**

18  **FAITH AND FAIR DEALING**

19  **Against All Defendants**

20       18.     Plaintiffs incorporate by this reference each and every allegation contained in

21  paragraphs 1 through 12 above, as though fully set forth herein.

22       19.     It is well settled that, in California, the law implies in every contract a covenant of

23  good faith and fair dealing. Broadly stated, that covenant requires that neither party do anything

24  which will deprive the other of the benefits of the agreement.  In this case, Plaintiffs entered into

25  the Settlement Agreement with TWDC to resolve TWDC's infringement of the Patent which

26  permitted TWDC to practice the Patent.  By expressly excluding the right of third parties to

27  practice the Patent, TWDC had the obligation not to countenance infringement of the Patent by

28

1   third parties it uses to sell or distribute the means and method to infringe on the Patent.  Such

2   conduct denied Plaintiffs the benefits under the Settlement Agreement.

3       20.    Plaintiffs have performed all conditions, covenants and promises required under

4   the Settlement Agreement except as otherwise prevented or obstructed by Defendants.

5       21.     Within the last four years, Defendants breached their contract with Plaintiffs by

6   facilitating Autodesk's expansion upon and development of the features of XGen and

7   incorporation of those features into Maya thereby infringing upon the Patent; as well as enabling

8   Autodesk to capture and emulate Plaintiffs' product enhancements and incorporate those into the

9   modified XGen product.

10      22.    Plaintiffs are informed and believe and on the basis of said information and belief

11  allege that as a direct, proximate and substantial result of the conduct of Defendants, Plaintiffs

12  have been damaged.  Plaintiffs are informed and believe and on the basis of said information and

13  belief allege that they have suffered damages of at least $15,000,000, plus incidental and

14  consequential damages, all in amounts yet to be determined.  Plaintiffs will either seek leave to

15  amend this complaint setting forth the full nature and extent of the damages, or according to

16  proof presented at the time of trial of this matter.

17                          **THIRD CAUSE OF ACTION**

18                  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE**

19                  **ECONOMIC ADVANTAGE**

20                          (Against All Defendants)

21      23.    Plaintiffs incorporate by this reference each and every allegation contained in

22  paragraphs 1 through 22 above, as though fully set forth herein.

23      24.    Plaintiffs had economic relationship with companies and individuals engaged in

24  the computer gaming and animation business that yielded Plaintiffs substantial present and future

25  economic benefits.  Defendants had knowledge of the success of JAI's product Shave and a

26  Haircut and thereafter engaged in intentional acts designed to disrupt Plaintiffs' businesses.

27  Plaintiffs' businesses were actually disrupted by Autodesk's enhancement of XGen incorporated

28  into its Maya product.  Autodesk's need to purchase or license Shave and a Haircut and other

products was reduced by its development of the Maya XGen product. Further, because the Maya XGen product replicates the methods of the Patent, other companies and individuals who were purchasers of Shave and a Haircut and other products of Plaintiffs was drastically impacted. The foreseeability of harm arising from Autodesk's infringement of the Patent was known to the Defendants. As a result, Plaintiffs suffered injury. There is a direct relationship between Autodesk's infringement of the Patent and the injury suffered. Defendants' conduct was wrong and in violation of the policy of preventing future harm. See J'Aire Corp. v. Gregory (1979) 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 410.

25.    Plaintiffs are informed and believe and on the basis of said information and belief allege that as a direct, proximate and substantial result of the conduct of Defendants, Plaintiffs have been damaged. Plaintiffs are informed and believe and on the basis of said information and belief allege that they have suffered damages of at least $15,000,000, plus incidental and consequential damages, all in amounts yet to be determined. Plaintiffs will either seek leave to amend this complaint setting forth the full nature and extent of the damages, or according to proof presented at the time of trial of this matter.

26.    Plaintiffs are informed and believe and on the basis of said information and belief alleges that Defendants' conduct was taken with the intent to injure Plaintiffs and enable Autodesk to capture Plaintiff's current and potential customers, or with a willful and conscious disregard of Plaintiffs' rights and property. Plaintiffs are informed and believe and on the basis of said information and belief allege that such fraudulent conduct constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California *Civil Code* §3294. As such, Plaintiffs are entitled to punitive damages and exemplary damages against Defendants herein for the sake of example and to punish Defendants for their unlawful conduct.

///

///

///

**COMPLAINT**

### FOURTH CAUSE OF ACTION

### NEGLIGENT INTERFERENCE WITH PROSPECTIVE

### ECONOMIC ADVANTAGE

(Against All Defendants)

27.     Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 22 above, as though fully set forth herein.

28.     Plaintiffs had economic relationship with companies and individuals engaged in the computer gaming and animation business that yielded Plaintiffs substantial present and future economic benefits.  Defendants had knowledge of the success of JAI's product Shave and a Haircut and thereafter engaged in acts resulting in the disruption of Plaintiffs' businesses. Plaintiffs' businesses were actually disrupted by the Autodesk's XGen Maya product. Autodesk's need to purchase or license Shave and a Haircut and other products was reduced by its development of the Maya XGen product. Further, because the Maya XGen product replicates the methods of the Patent, other companies and individuals who were purchasers of Shave and a Haircut and other products of Plaintiffs was drastically impacted.  The foreseeability of harm arising from Autodesk's infringement of the Patent was known to the Defendants.  As a result, Plaintiffs suffered injury.  There is a direct relationship between Autodesk's infringement of the Patent and the injury suffered.  Defendants' conduct was wrong and in violation of the policy of preventing future harm.   See J'Aire Corp. v. Gregory (1979) 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 410.

29.     Plaintiffs are informed and believe and on the basis of said information and belief allege that as a direct, proximate and substantial result of the conduct of Defendants, Plaintiffs have been damaged.  Plaintiffs are informed and believe and on the basis of said information and belief allege that they have suffered damages of at least $15,000,000, plus incidental and consequential damages, all in amounts yet to be determined.  Plaintiffs will either seek leave to amend this complaint setting forth the full nature and extent of the damages, or according to proof presented at the time of trial of this matter.

1    **WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

2    **ON THE FIRST CAUSE OF ACTION**

3    1.    For damages, including but not limited to lost sales and profits and general

4 damages in an amount believed to be at least $15,000,000, but  according to proof at trial;

5    2.    For consequential and incidental damages according to proof;

6    **ON THE SECOND CAUSE OF ACTION**

7    1.    For damages, including but not limited to lost sales and profits and general

8 damages in an amount believed to be at least $15,000,000, but  according to proof at trial;

9    2.    For consequential and incidental damages according to proof;

10    **ON THE THIRD CAUSE OF ACTION**

11    1.    For damages, including but not limited to lost sales and profits and general

12 damages in an amount believed to be at least $15,000,000, but  according to proof at trial;

13    2.    For consequential and incidental damages according to proof;

14    3.    For punitive and exemplary damages according to proof;

15    **ON THE FOURTH CAUSE OF ACTION**

16    1.    For damages, including but not limited to lost sales and profits and general

17 damages in an amount believed to be at least $15,000,000, but  according to proof at trial;

18    2.    For consequential and incidental damages according to proof;

19    **ON ALL CAUSES OF ACTION**

20    1.    For reasonable attorneys fees as permitted by law or otherwise according to proof;

21    2.    For costs of suit herein incurred; and

22    3.    For such other and further relief as the Court may deem proper.

23

24 DATED: July 20, 2016        SMITH  LAW FIRM
                      A Professional Law Corporation

25

26                By:  _____
                      CRAIG R. SMITH

27                      Attorneys for Plaintiffs
                      JOSEPH ALTER and

28                      JOSEPH ALTER, INC.

**COMPLAINT**

1

## DEMAND FOR JURY

2          Plaintiffs JOSEPH ALTER and JOSEPH ALTER, INC. hereby demands a trial of this

3    matter by jury.

4

5    DATED: July 20, 2016                    SMITH  LAW FIRM
                                             A Professional Law Corporation
6

7                                            By:   _____

8                                                  CRAIG R. SMITH
                                                   Attorneys for Plaintiffs
9                                                  JOSEPH ALTER and
                                                   JOSEPH ALTER, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**