UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH ALTER, et al.,<br><br>    Defendants. | Case No. 16-cv-04722-WHO<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING AND DENYING VARIOUS SEALING MOTIONS**<br><br>Re: Dkt. Nos. 52, 51, 59, 61, and 68 |

**INTRODUCTION**

Plaintiff Autodesk, Inc. brings this action against defendants Joseph Alter and Joseph Alter, Inc. (collectively, "Alter") for declaratory judgment of license and non-infringement of U.S. Patent No. 6,720,962 (the "'962 Patent"), which Alter had previously licensed to The Walt Disney Company ("Disney"), who licensed it to Autodesk. In turn, Alter asserts counterclaims against Autodesk for declaratory judgment of no license or exhaustion, direct and indirect infringement, and intentional and negligent interference with prospective economic advantage. Autodesk now moves for judgment on the pleadings because: (1) it is licensed to the '962 Patent pursuant to Alter's Settlement and License Agreement with Disney ("the '962 License Agreement"), (2) Alter's rights to enforce the '962 Patent are exhausted, and (3) Alter's counterclaims are barred, estopped, and foreclosed by the express terms of the '962 License Agreement. However, the record does not contain sufficient information for me to make such a ruling; it is missing, among other things, the license agreement between Disney and Autodesk, the scope of which is in

dispute. Although the language in the '962 License Agreement is broad, there needs to be more factual development before I can determine as a matter of law that Autodesk is correct. I DENY its motion for judgment on the pleadings.

**BACKGROUND[1]**

## I. FACTUAL BACKGROUND

Autodesk is a Delaware corporation with its principal place of business in San Rafael, California. Complaint ("Compl.") (Dkt. No. 1) ¶ 4. It is a global industry-leader in digital design technologies and develops "Maya" software, a program that enables film and design professionals to "create lifelike images, realistic animations, extraordinary visual effects, and full-length feature films." *Id*.

Joseph Alter is a resident of Westlake Village, California who invents and develops computer animation software. *Id*. ¶ 5; Counterclaim and Answer ("Countercl.") (Dkt. No. 34) ¶ 39. He is the sole inventor of, and owner of rights in, the '962 Patent. Compl. ¶ 5. The '962 Patent, entitled "Hair Generation and Other Natural Phenomena with Surface Derived Control

---

[1] The parties dispute whether I can consider various documents that are extrinsic to the pleadings. I admit the '962 License Agreement (Dkt. No. 52-3[redacted]; Dkt. No. 51-6[under seal]) under the incorporation by reference doctrine. Autodesk's complaint expressly refers to and extensively relies on the '962 License Agreement, *see* Compl. ¶¶ 14, 21, 27, 32, 34-36, as does Alter's Counterclaim, *see* Countercl. ¶¶ 14, 32, 36, 48, 51, 66-89.

I take judicial notice of Alter's October 5, 2011 complaint against Disney (Dkt. No. 52-2), filed in *Joseph Alter v. The Walt Disney Company*, Case No. 11-cv-08277-PA (C.D. Cal. Oct. 5, 2011). It is a matter of public record.

I decline to consider the eleven extraneous exhibits attached to Alter's Declaration in support of its Opposition (*see* Alter Decl., Dkt. No. 63, Exs. 1-11), the undated screenshot of Autodesk's website (*see* Bartlett Decl., Dkt. No. 62-1, Ex. A), excerpts from Autodesk's 2016 Form 10-K (*see id.*, Ex. B), and Autodesk's "Licenses and Services Agreement" downloaded on March 22, 2017 (*see id.*, Ex. C). None of these documents are referenced in the pleadings or the subject of judicial notice.

I do not take judicial notice of Autodesk's August 9, 2011 press release (Dkt. No. 52-1) regarding its agreement with Disney to license XGen. Although both parties' pleadings acknowledge that in 2011, an XGen license agreement between Disney and Autodesk was "announced," the parties do not refer to this document anywhere in the pleadings, and there appears to be disagreement as to what is covered by the XGen license agreement, which is not part of the record. While the fact of the 2011 announcement of the XGen license agreement may be undisputed, the contents of Autodesk's press release regarding that agreement are nonetheless subject to reasonable dispute.

2

1 Volumes in Computer Graphics and Animation," was filed on December 4, 2000, and issued to him on April 13, 2004. *Id.*; Compl., Ex. A ('962 Patent) (Dkt. No. 1-1) at 2. The '962 Patent discloses and claims certain methods for creating simulated human and animal hair using computer graphics and animation. Countercl. ¶ 55.

Defendant Joseph Alter, Inc., Joseph Alter's eponymous small business, is a California corporation with its principal place of business in Westlake Village, California. Compl. ¶ 5. It makes, markets, and sells "Shave and a Haircut" software, a computer graphics program for simulating realistic animation of hair and fur that moves naturally. *Id*. ¶¶ 6, 12; Countercl. ¶ 45. Shave and a Haircut is sold as an extension (or "plug-in") to Autodesk's Maya software. Compl. ¶¶ 6, 12. The core technology underlying the Shave and a Haircut software is claimed in Alter's '962 Patent. Countercl. ¶ 45. Joseph Alter, Inc. is listed as the assignee of rights in the '962 Patent. Compl. ¶¶ 5, 13.

Former counter-defendant Disney is a Delaware corporation with its principal place of business in Burbank, California. Countercl. ¶ 41. Disney created "XGen" software, a procedural geometry instancing tool used in computer generated animation, which is sold as a plug-in to Autodesk's Maya software. *Id*. ¶ 47. In developing XGen, Disney "incorporated features that practice the ['962] Patent." Compl., Ex. B (2016 Alter v. Disney Complaint) (Dkt. No. 1-2) ¶ 8. Alter's Shave and a Haircut software competes with Disney's XGen software. Countercl. ¶¶ 49, 64, 79.

In August 2011, Autodesk announced that it had signed an agreement with Disney to license and sell Disney's XGen software as a plug-in to Maya. Compl. ¶ 14. On October 5, 2011, Alter, proceeding pro se, filed an infringement action against Disney in the Central District of California, alleging that Disney's development and licensing of XGen to Autodesk infringed the claims in the '962 Patent. *Id*. ¶ 15; *see* Motion for Judgment on the Pleadings ("MJP") (Dkt. No. 52[redacted]; Dkt. No. 51-4[under seal]), Ex. B (2011 Alter v. Disney Complaint) (Dkt. No. 52-2). Alter and Disney resolved the litigation by entering into a Settlement and License Agreement ("'962 License Agreement"), dated January 31, 2012, under which the parties stipulated to dismiss with prejudice all claims and counterclaims asserted in the action. Compl. ¶ 5; *see* MJP, Ex. C

('962 License Agreement) (Dkt. No. 52-3[redacted]; Dkt. No. 51-6[under seal]) at 2. Pursuant to the '962 License Agreement, in exchange for "a small settlement payment" Alter granted Disney a perpetual license to the '962 Patent, released all claims regarding Disney's use of the '962 Patent, and covenanted not to sue Disney or its affiliates, customers, and other third parties in connection with the '962 Patent. Countercl. ¶ 48; *see* MJP, Ex. C §§ 2.1-2.3, 2.5.

## II. PROCEDURAL HISTORY

The procedural history of this case is somewhat complex. On July 22, 2016, one month before Autodesk brought the instant action, Alter filed a complaint for monetary damages against Disney in Superior Court of California, County of Los Angeles, which Disney removed to the Central District of California. Compl. ¶ 16; Reply to Countercl. (Dkt. No. 37) ¶ 53. The complaint asserted four causes of action related to Disney's alleged breach of the '962 License Agreement by licensing XGen to Autodesk: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional interference with prospective economic advantage; and (4) negligent interference with prospective economic advantage. *See* Compl., Ex. B ¶¶ 13-29. The complaint alleged that after January 31, 2012, with Disney's knowledge and consent, "Autodesk developed and expanded upon the features of XGen and created essentially a new product by the same name, which at its core is still infringing the ['962] Patent." *Id*. ¶ 11.

Meanwhile, on August 17, 2016, Autodesk filed the instant action against Alter for declaratory judgment of license and non-infringement of the '962 Patent. Alter moved to dismiss for lack of subject matter jurisdiction, or in the alternative, to stay the action pending resolution of its earlier-filed action against Disney. Dkt. No. 14. Alter's motion was denied on November 14, 2016. That same day, Alter voluntarily dismissed its action in the Central District. *See* Dkt. Nos. 31, 35.

On November 28, 2016, Alter filed an answer to Autodesk's complaint and asserted counterclaims for: (1) declaratory judgment of no license to, or exhaustion of, the '962 Patent against Disney and Autodesk; (2) infringement of the '962 Patent against Autodesk; (3) indirect infringement of the '962 Patent against Disney; (4) breach of contract against Disney; (5) breach of the implied covenant of good faith and fair dealing against Disney; (6) intentional interference

4

with prospective economic advantage against Autodesk and Disney; and (7) negligent interference with prospective economic advantage against Autodesk and Disney. Countercl. ¶¶ 65-97. Autodesk filed an answer to Alter's counterclaims on December 19, 2016. Dkt. No. 37.

After Autodesk filed the motion for judgment on the pleadings, Disney moved to sever and transfer Alter's counterclaims against it to the Central District of California pursuant to the forum selection clause contained in the '962 License Agreement. Dkt. No. 60[redacted]; Dkt. No. 59-4[under seal]. Alter opposed transfer; Autodesk did not take a position. Following an initial review of the briefing, I ordered the parties to show cause why this entire action should not be transferred to the Central District of California on the basis that the claims in this case are premised on the '962 License Agreement, which was negotiated, drafted, executed, and performed in the Central District by parties who are located in the Central District. Dkt. No. 77. Disney responded that it had reached an agreement with Alter to dismiss Alter's counterclaims against it with prejudice (Dkt. No. 78); Alter, in light of its stipulation with Disney, requested that this case be resolved in this District (Dkt. No. 80); and Autodesk similarly opposed transfer (Dkt. No. 79). Pursuant to the stipulation between Alter and Disney, I dismissed counter-defendant Disney with prejudice. Dkt. No. 82.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 7(a) provides that the only pleadings allowed are: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). When deciding such a motion, "the allegations of the non-moving party must be accepted as true,

while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

A motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* A party must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) or 12(c) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Rice v. Ralph Foods*, No. C 09-02650 SBA, 2010 WL 5017118, at *3 (N.D. Cal. Dec. 3, 2010).

**DISCUSSION**

**I.     RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

Autodesk moves for judgment on the pleadings against Alter on its claims for declaratory judgment of non-infringement and license on the grounds that: (1) Autodesk is licensed and released under the '962 License Agreement; (2) Disney's authorized sale of XGen to Autodesk exhausted Alter's rights to enforce the '962 Patent; and (3) Alter's counterclaims against Autodesk (declaratory judgment of no license or exhaustion, infringement of the '962 Patent, and intentional and negligent interference with prospective economic advantage) are barred and estopped as a matter of law, and foreclosed by the express terms of the '962 License Agreement. MJP at 4. Alter responds that the '962 License Agreement does not extend to Autodesk, the doctrine of

6

patent exhaustion is inapplicable, and there is no estoppel. Opposition to MJP ("Oppo.") (Dkt. No. 62[redacted]; Dkt. No. 61-4[under seal]) at 8-14. On this record, Autodesk has not established that there is no issue of material fact in dispute.

### A. Declaration of License to the '962 Patent

Pursuant to the terms of the '962 License Agreement, Alter granted Disney and its Affiliates "a non-exclusive, irrevocable, perpetual, worldwide, fully paid-up, non-royalty bearing license to make, have made, use, import, have imported on their behalf, sell, offer for sale, and to otherwise commercially exploit and distribute any invention claimed, directly or indirectly, in the ['962 Patent]." MJP, Ex. C § 2.1. In arguing their respective positions, both parties rely heavily on Section 2.1 of the '962 License Agreement, which provides in relevant part:

> The licenses granted in this Section 2.1 extend to (a) third parties to the extent necessary for such third parties to provide (i) services or perform work on behalf of Licensee and its Affiliates with respect to the Licensed Products and/or (ii) the third party's products to the extent those products are incorporated or part of a Licensed Product; (b) direct or indirect customers or end-users of the Licensed Products to the extent necessary to implement or use the Licensed Products; or (c) to third parties to the extent such third parties have rights under the doctrine of exhaustion. . . . For the avoidance of doubt, this section 2.1 and the licenses granted hereunder shall not extend to any products or services of third parties beyond which is specified in this Section 2.1.

*Id*. The '962 License Agreement defines "Licensed Products" as "any products, services, methods, apparatuses, or systems made, used, sold or otherwise distributed or performed by or for Licensee [i.e., Disney] and its Affiliates (including all activities performed at Licensee or Affiliate facilities)." *Id*. at § 1.3.

Autodesk argues that Disney's license to the '962 Patent (granted pursuant to the '962 License Agreement) "extends to Autodesk as a 'third party' whose 'products are incorporated or part of a Licensed Product,' i.e., XGen, as a 'direct or indirect customer' of XGen, and as a third party with 'rights under the doctrine of exhaustion.'" MJP at 4-5. Alter argues that Autodesk is not licensed under the '962 License Agreement and that the third party rights granted in Section 2.1 are inapplicable to Autodesk because: (1) Autodesk is not providing "services or perform[ing] work" for Disney as to a "Licensed Product"; (2) Maya (or any portion of Maya) is not a Disney "Licensed Product," as "it is not sold or distributed by Disney," but rather it is "made, sold, and

distributed by and for Autodesk"; (3) XGen is not Disney "Licensed Product," as it "is not something that can be purchased or licensed from Disney"; and (4) the doctrine of exhaustion is inapplicable because Disney has not made an "authorized sale" of XGen to Autodesk. Oppo. at 10-13.

Notwithstanding the substantive arguments, making a judgment based on the pleadings would be premature. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, 896 F.2d at 1550. In this case, construing the factual allegations in Alter's Counterclaim as true, material facts remain in dispute.

As an initial matter, resolving the arguments raised by the parties requires information not presently in the record. Autodesk asks me to find that it is a "third party" whose "products are incorporated or part of a Licensed Product," yet the XGen license agreement between Autodesk and Disney is not a part of the record, nor are the contents of that agreement discussed in the pleadings. MJP at 4-5. Moreover, Autodesk does not make this "third party" allegation in its complaint. *See generally* Compl.

Alter's arguments regarding the applicability of the '962 License Agreement likewise require further factual development. Alter argues that Maya is not a Disney "Licensed Product," because it is "not sold or distributed by Disney" but rather is "made, sold, and distributed by and for Autodesk." Oppo. at 10; *see also* Countercl. ¶ 36 ("when Autodesk makes and sells instances of XGen to its Maya customers, it is making and selling an unlicensed Autodesk product, not a Disney product"). Again, I cannot make any legal determination as to this point without knowing, for example, the nature of the license relationship between Disney and Autodesk. The facts surrounding the "sale" or "licensure" of XGen have not been included in any pleadings. Similarly, I cannot determine whether "Autodesk is not a customer of Disney with respect to XGen in its current form" under the '962 License Agreement without reference to the XGen license agreement between Disney and Autodesk, which is neither included in the pleadings nor in the record. *See* Countercl. ¶ 70. Alter states as much in its Counterclaim; in responding to Autodesk's allegation

8

that "Autodesk is a customer of Disney and/or end-user of XGen" (Compl. ¶ 33), Alter asserts that it "does not understand in what respect Autodesk is a 'customer . . . and/or end user . . .' of XGen" as it "is not aware of the legal relationship between Disney and Autodesk because, despite many requests, neither Disney nor Autodesk has heretofore been willing to disclose any Disney-Autodesk agreement relating to XGen." Countercl. ¶ 37.

### B. Declaration of Non-Infringement of the '962 Patent

Autodesk's declaratory judgment claim of non-infringement turns upon the same facts as its claim for declaratory judgement of license. Alter alleges that Autodesk continues to directly and indirectly infringe "one or more of the '962 Patent's claims by making and selling XGen as part of the Maya software suite and providing support and training for its users in the use of XGen to animate hair, fur, and other large systems of geometry." Countercl. ¶ 77. Autodesk alleges that it does not directly or indirectly infringe the claims of the '962 Patent because (1) "Maya cannot be used to perform all steps of the method claims in the '962 Patent," and (2) "Disney's authorized sale of XGen under license from Alter exhausted Alter's ability to enforce the '962 patent against purchasers and users of XGen, including Autodesk." Compl. ¶¶ 26-27. Autodesk further asserts that pursuant to the terms of the '962 License Agreement, Alter "released all past, present, and future claims of infringement, known or unknown, that in any way relate to or arise out of the products of services used or distributed by or for 'Licensee Releasees,' which includes XGen and Autodesk." MJP at 5.

Autodesk's claim that it does not directly or indirectly infringe the claims of the '962 patent suffers from insufficient factual development; it turns largely upon the existence of an "authorized sale of XGen under license" from Disney to Autodesk. The existence of such a transaction is at the center of the dispute between the parties—Alter claims that there was not a sale but rather a licensure, and that, as such, the exhaustion doctrine does not apply. Because the parties dispute issues of fact material to this claim, judgment on the pleadings with respect to this claim must be denied. *See Chavez*, 683 F.3d at 1108 ("Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute.") (internal quotation marks omitted).

9

### C. Estoppel

Autodesk argues that claim preclusion bars Alter from "reasserting the same fully-resolved patent infringement claim for making, using, selling, and/or distributing XGen as a plug-in to Autodesk's Maya software product" that Alter asserted against Disney in the 2011 infringement action. MJP at 13. Alter contends that claim preclusion does not apply because "the infringing functionality of Maya was first introduced . . . in 2013, *after* the Alter-Disney settlement in 2012." Oppo. at 15 (emphasis in original).[2]

"Claim preclusion prevents the relitigation of claims previously tried and decided," and "bars the subsequent application of all defenses that could have been asserted in a previous action between the same parties on the same cause of action, even if such contentions were not raised." *Littlejohn v. United States*, 321 F.3d 915, 919-20 (9th Cir. 2003) (internal citations omitted). Claim preclusion "applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Stewart v. U.S. Bancorp, Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009). An analysis of whether successive lawsuits involve an "identity of claims," or the "same cause of action" "is unnecessary, however, when a ground of recovery or defense could not have been asserted in the prior action. *Littlejohn*, 321 F.3d at 920. In such cases, the defense or ground of recovery falls outside the scope of claim preclusion." *Id.* Here, Alter could not have raised the counterclaims it asserts against Autodesk in this action in its prior suit against Disney (to which Autodesk was not a party), as the counterclaims here are based on the ultimate conclusion of, and arise from conduct occurring after, that suit.

In Alter's 2011 infringement suit against Disney, Alter alleged that "Defendant [Disney] has infringed and continues to infringe one or more claims in the '962 patent by making use of said systems as a key part of their production pipeline on a number of films, as has as well a recently advertised licensing deal involving one of said systems (XGen) to Autodesk, Inc[.] for

---

[2] Alter also argues that issue preclusion does not bar its claims. Issue preclusion, which Autodesk does not argue applies here, "bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

10

commercial sale and distribution as part of their Maya product worldwide in direct competition with Plaintiff [Alter]." MJP, Ex. B ¶ 20. In the instant action, Alter alleges that "Autodesk has infringed, and continues to infringe, directly and indirectly, one or more of the '962 Patent's claims by *making* and selling XGen as part of the Maya software suite." Countercl. ¶ 77 (emphasis added). The basis for Alter's counterclaims here is that Autodesk's post-'962 License Agreement development and expansion of XGen has essentially "converted XGen to an Autodesk product" and is not authorized under the '962 License Agreement and infringes the claims of the '962 Patent. Countercl. ¶¶ 49, 86. As Alter points out, "the Autodesk product at issue [i.e., the upgraded version of XGen] was not released until after the Alter-Disney litigation concluded." Oppo. at 14; *see also* Compl., Ex. B ¶ 11 ("On or about August 8, 2013, Autodesk released an upgraded version of XGen."). Thus, Autodesk's claim preclusion argument fails because Alter's claims here are based on alleged infringing activity arising after the January 31, 2012 resolution of the 2011 litigation (i.e., the effective date of the '962 License Agreement). *See e.g.*, *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) ("A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim."). Because Alter could not assert its counterclaims against Autodesk during Alter's 2011 litigation against Disney, claim preclusion does not apply.

## II. ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL

Courts have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc's Inc.*, 435 U.S. 589, 597 (1978). A party seeking to seal judicial records attached to a dispositive motion must "articulate[ ] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (alteration in original) (internal quotation marks and citations omitted). Examples of compelling reasons include when court records are used for "improper purposes," such as "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (citing *Nixon*, 435 U.S. at 598). Similarly, "sources of business information that might harm a litigant's competitive standing" may also

11

constitute a compelling reason to seal, *see Nixon*, 435 U.S. at 598, as may a company's confidential profit, cost, and pricing information that if publically disclosed could put the company at a competitive disadvantage, *see Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013). The court must balance the competing interests of the public's right of inspection against litigants' need for confidentiality, and "if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179.

Parties seeking to seal judicial records in this District must additionally comply with Civil Local Rule 79-5, which requires that sealing requests be "narrowly tailored to seek sealing only of sealable material." Civil L. R. 79-5(b). Where the submitting party seeks to file under seal a document designated as confidential by another party, the designating party bears the burden of articulating compelling reasons for sealing. *Id.* 79-5(e).

Here, Autodesk seeks to file under seal the '962 License Agreement, attached as Exhibit C (Dkt. No. 51-6[under seal]) to the Krause Declaration in support of Autodesk's motion for judgment on the pleadings, and portions of its Motion (Dkt. No. 51-4[under seal]) and Reply (Dkt. No. 68-4[under seal]) which contain quotations from Exhibit C.[3] *See* Autodesk's Admin. Mots. (Dkt. Nos. 51, 68). According to Autodesk's declaration in support of sealing, Exhibit C was designated by Alter and Disney as "highly confidential outside counsel only" pursuant to the parties' Protective Order (Dkt. No. 39), and the Court previously granted Alter's motion to seal portions of that document submitted in support of Alter's motion to dismiss. Krause Decl. ISO Autodesk's Admin. Mot. (Dkt. No. 51-1) ¶ 2. Alter and Disney also filed declarations in support of Autodesk's administrative motion to seal. *See* Alter Decl. ISO Autodesk's Admin. Mot. (Dkt. No. 54); Phillips Decl. ISO Autodesk's Admin. Mot. (Dkt. No. 57).

---

[3] Disney also moved to file under seal the '962 License Agreement, attached as Exhibit B (Dkt. No. 59-9[under seal]) to the Phillips Declaration in support of Disney's motion to sever and transfer, and portions of its Motion (Dkt. No. 59-4[under seal]) that quote from the agreement. *See* Disney's Admin. Mot. to Seal (Dkt. No. 59). Because Disney is no longer a party to this action, its administrative motion to file under seal is DENIED as moot.

Alter seeks to file under seal portions of its Opposition (Dkt. No. 61-4[under seal]) that quote from Exhibit C, as well as Exhibits 4, 8, and 9 (Dkt. Nos. 61-5, 61-6, 61-7 [all under seal]) attached to Alter's declaration submitted in support of its Opposition. *See* Alter's Admin. Mot. to Seal Oppo. (Dkt. No. 61). Autodesk filed a declaration in support of sealing Exhibits 9 and 8, *see* Krause Decl. ISO Alter's Admin. Mot. to Seal Oppo. (Dkt. No. 64-1), and Disney filed a declaration in support of sealing the unredacted version of Alter's Opposition and Exhibit 4, *see* Phillips Decl. ISO Alter's Admin. Mot. to Seal Oppo. (Dkt. No. 65).

Alter and Disney, as the designating parties, must demonstrate a compelling reason for sealing. *See* Civil L. R. 79-5(e). The fact that portions of the '962 License Agreement were previously ordered sealed by the Court does not relieve the parties of articulating a compelling reason for sealing at this time. *See Kamakana*, 447 F.3d at 1179 ("The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order."). Disney argues that disclosing the contents of the '962 License Agreement "would harm [Disney's] commercial standing because it gives parties in future negotiations with [Disney] access to secret information about comparative settlement pricing and terms." Phillips Decl. ISO Autodesk's Admin. Mot. ¶ 8. Alter asserts that the '962 License Agreement should be sealed (along with portions of the parties' briefs discussing the agreement) because it is "competitively sensitive" and "contains financial terms of settlement and other license terms which Alter and Disney maintain confidential." Alter Decl. ISO Autodesk's Admin. Mot. ¶¶ 2, 3. Alter also argues that the unredacted version of its Opposition should remain sealed because it "discloses the financial terms of settlement and other sensitive information pertaining to the provisions [in the] license agreement." Alter Decl. ISO Alter's Admin. Mot. to Seal Oppo. (Dkt. No. 61-1) ¶ 2.

While I agree that the settlement amount Disney paid Alter should remain confidential, I find that the parties have failed to meet their burden of setting forth a compelling reason to seal the remaining provisions of the '962 License Agreement. The express terms of the '962 License Agreement are directly relevant to the merits of this case; the parties' claims cannot be resolved without reference to those terms. *See Ctr. for Auto Safety v. Chrysler Grp.*, *LLC*, 809 F.3d 1092,

1102 (9th Cir.) (holding that a "strong presumption of public access" applies to motions and their attachments that are "more than tangentially related to the merits of the case"). This conclusion is further supported by the fact that counsel for Autodesk—without objection from Alter's counsel—quoted extensively from the '962 License Agreement in open court during the April 26, 2017 hearing. The parties have also failed to "narrowly tailor" their sealing requests "to seek sealing only of sealable material." Civil L. R. 79-5(b). The parties seek to redact all but the introductory paragraph and signature blocks of the '962 License Agreement, and all portions of their briefs quoting from the agreement, without explaining, for example, why the forum selection clause should remain under seal when the parties have cited to that provision extensively without seeking redaction of those discussions.

Accordingly, Autodesk's administrative motion to file under seal (Dkt. No. 51) is granted to the limited extent that Section 3.1 of the '962 License Agreement, which discusses the settlement payment amount and terms, may be redacted. Autodesk's administrative motion to file under seal portions of its Reply (Dkt. No. 68) is denied. Alter's administrative motion to file under seal (Dkt. No. 61) is granted only with respect to the portion of its Opposition which identifies the settlement amount. Alter's request to seal three exhibits submitted in support of its Opposition to Autodesk's Rule 12(c) motion is terminated as moot; because I did not consider or rely on those documents in ruling on Autodesk's motion for judgment on the pleadings, they may remain under seal at this time.

## CONCLUSION

Autodesk's motion for judgment on the pleadings is DENIED. The parties' administrative motions to file under seal are GRANTED to the limited extent that Section 3.1 of the '962 License Agreement, which discusses the settlement payment and terms, may be redacted, as may the portion of Alter's Opposition referencing that amount. The parties shall refile the documents previously filed under seal in accordance with this Order within ten days of the date below.

This Order disposes of Docket Nos. 51, 52, 59, 61, and 68.

**IT IS SO ORDERED.**

Dated: May 9, 2017

William H. Orrick
United States District Judge